UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TIFFANY SHEFFIELD, on her own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXTENDED STAY AMERICA, INC., et al.,<br><br>Defendants. | Case No. 3:26-cv-05763-TMC<br><br>ORDER REMANDING CASE |

## I. INTRODUCTION AND BACKGROUND

This case is a proposed class action against Defendants Extended Stay America, Inc., ESH Hospitality Strategies, LLC, and ESA Management LLC for allegedly sending false and misleading emails in violation of Washington's Commercial Electronic Mail Act ("CEMA"), RCW 19.190, and Washington's Consumer Protection Act ("CPA"), RCW 19.86. *See* Dkt. 1-2.

On June 9, 2026, Plaintiff Tiffany Sheffield filed a putative class complaint against Defendants in Pierce County Superior Court. *Id.* Sheffield alleges that Defendants "have spammed" her and other Washington consumers "with commercial emails whose subject lines contain false or misleading statements in violation of her right to be free from such annoyance and harassment under CEMA." *Id.* ¶ 98; *see also id.* ¶ 4. She describes a "deceptive" marketing

scheme whereby Defendants send emails announcing time-limited offers and promotions that are later extended. *Id.* ¶¶ 43–88. Alleging that she "has received emails as part of the marketing scheme described," she specifically points to an email she received from Defendants on September 6, 2022, which she alleges "contained false statements of fact" in its subject line. *Id.* ¶¶ 98–101.

On July 10, 2026, Defendants removed the case to federal court based on diversity jurisdiction under the Class Action Fairness Act ("CAFA"). Dkt. 1. On August 31, they moved to dismiss, arguing that Sheffield failed to state a claim under CEMA or the CPA, and that CEMA is preempted by the federal CAN-SPAM Act. Dkt. 12. After reviewing the complaint, the Court determined that "it is not apparent that Sheffield has alleged an Article III as opposed to merely a statutory injury" and ordered Defendants to show cause why this case should not be remanded to Pierce County Superior Court for lack of standing. Dkt. 13 at 4. On September 23, Defendants responded to the show cause order. Dkt. 16. The parties then jointly moved to stay all proceedings pending resolution of the order to show cause. Dkt. 17. On September 28, the Court granted the requested stay. Dkt. 18.

The Court concludes that Sheffield lacks Article III standing and REMANDS this case to Pierce County Superior Court.

## II. LEGAL STANDARD

Both the Supreme Court and the Ninth Circuit "have held that whether or not the parties raise the issue, federal courts are required sua sponte to examine jurisdictional issues such as standing." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) (internal quotation marks, alteration, and emphasis omitted) (quoting *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002)). Removal of a civil action to federal district court is proper when the federal court would have original jurisdiction over the state court action. 28 U.S.C.

§ 1441(a). Although there is "no antiremoval presumption" for cases removed pursuant to CAFA, the removing party must put forth evidence establishing jurisdiction if "the court questions[ ] the defendant's allegation[s]." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

Moreover, as the party invoking federal jurisdiction, Defendants bear the burden of establishing the existence of a case or controversy under Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). For an injury in fact to exist, a statutory violation must have "caused [a plaintiff] to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017) (second alteration in original) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. at 340–41). "[A] plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* (alteration in original) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. at 341). Furthermore, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

## III. DISCUSSION

Defendants argue that the Court should not remand this case because Sheffield has alleged a concrete injury sufficient for Article III standing. Dkt. 16 at 2–7. In the alternative, they ask the Court to stay this case pending the Ninth Circuit's resolution of *Montes v. Penney OpCo, LLC*, No. 26-241, which concerns a similar legal question. *Id.* at 7–9; *see Montes v. Catalyst Brands LLC*, No. 2:25-CV-0281-TOR, 2025 WL 3485827, at *2 (E.D. Wash. Dec. 4, 2025) (concluding that the receipt of emails allegedly in violation of CEMA and the CPA is not an injury-in-fact for the purposes of Article III standing). The Court addresses each of these arguments in turn.

### A. Sheffield lacks Article III standing.

The Washington Supreme Court recently held that "CEMA does not require a showing of injury for statutory damages to be awarded because the injury is receiving the e-mail that violates CEMA." *Brown v. Old Navy, LLC*, 4 Wn.3d 580, 592, 567 P.3d 38 (2025). But the legislature's creation of a statutory injury does not automatically confer Article III standing. *TransUnion*, 594 U.S. at 426–27. Instead, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427. In other words, for this Court to have either original or removal jurisdiction, a CEMA plaintiff must have alleged that she has "suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025).

In *Samaduroff v. David Peyser Sportswear, Inc.*, this Court held that "the mere receipt of alleged misleading or false marketing email subject lines, absent any allegation of economic loss, detrimental reliance, or any comparable injury, does not constitute a concrete harm sufficient to establish Article III injury." No. 3:26-CV-05275-TMC, 2026 WL 2675977, at *2 (W.D. Wash.

Sept. 11, 2026) (quoting *Stutsman v. Sirius XM Radio LLC*, No. 2:25-CV-01113-LK, 2026 WL 2445129, at *4 (W.D. Wash. Aug. 20, 2026)). While the Court acknowledges the contrary decisions cited by Defendants, *see* Dkt. 16 at 4–5, the facts of this case give the Court no reason to depart from its holding in *Samaduroff*.

Defendants argue that by "alleg[ing] both the receipt of unwanted communications and the receipt of misleading information," Sheffield has pled an injury similar to the traditional harms of nuisance, invasion of privacy, and intrusion upon seclusion. *Id.* at 4 (emphasis omitted). But the "annoyance and harassment" alleged in the complaint are not sufficiently connected to these traditional injuries, which involve nonconsensual conduct. Critically, Sheffield does not allege that any email she received was unsolicited, *see* Dkt. 1-2 ¶¶ 98–101, and the complaint does not contain any allegation that Sheffield made a purchase from Defendants in reliance on a false or misleading email subject line, or that she personally faces a risk of doing so in the future.

With these circumstances in mind, Sheffield lacks standing to pursue either damages or injunctive relief. First, "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm." *TransUnion*, 594 U.S. at 436. Sheffield alleges no "economic loss, detrimental reliance, or any comparable injury" arising from the emails she received, foreclosing her ability to seek damages for Defendants' alleged conduct. *Samaduroff*, 2026 WL 2675977, at *2 (quoting *Stutsman*, 2026 WL 2445129, at *4). Second, while "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring," that risk must be "sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435. Although Sheffield claims to have previously received false or misleading emails from Defendants, "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). And even assuming that the emails will continue,

Sheffield does not allege that they will affect her own purchasing habits in any way. *See id.* at 969–70 (explaining that threats of future harm from false advertising may include plausible allegations that a consumer "will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or "that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved"). In short, no allegations of *imminent* risk are present in Sheffield's complaint. Injunctive relief is thus unavailable.

Defendants attempt to distinguish *Samaduroff* and similar cases by arguing that some of these decisions relied on the Ninth Circuit's statement in *Gaus v. Miles* that "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." 980 F.2d 564, 566 (9th Cir. 1992); Dkt. 16 at 6–7. Defendants argue that the presumption against removal outlined in *Gaus* is not applicable here because the jurisdictional facts in the complaint are undisputed, and they urge the Court to apply a more relaxed standard in determining whether to remand this case. *Id.* But the Court need not—and does not—rely on the holding in *Gaus* to determine that it lacks jurisdiction here. Because this case was removed pursuant to CAFA, the Court does not apply any presumption against removal. *See Dart Cherokee*, 574 U.S. at 89. And it is the lack of sufficient facts alleged, not the existence of disputed facts, that leads the Court to conclude that Sheffield lacks Article III standing.

Defendants further argue that remand would be "futile" because Sheffield's case fails on its merits. Dkt. 16 at 5. But Defendants have not shown with "absolute certainty" that a state court would dismiss the action or that the complaint could not be saved by amendment in state court. *See Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1189–90 (9th Cir. 2022) (quoting *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 920 n.6

(9th Cir. 2022)) (explaining that, even if the futility exception remains good law, it applies only when there is "absolute certainty" that the state court would dismiss the action). In concluding that Sheffield lacks standing, the Court decides only a threshold "jurisdictional question" that "precedes . . . analysis of the merits." *Equity Lifestyle Props., Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008). And in determining that Sheffield does not allege a concrete injury for the purposes of Article III, the Court makes no ruling as to Sheffield's standing to sue Defendants in state court. The Court declines Defendants' invitation to consider the merits of a matter over which it lacks jurisdiction.

**B. The Court declines to stay this case pending the outcome of *Montes v. Penney OpCo, LLC*.**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). To that end, a district court has discretion to grant or deny a request for a stay. *Nken v. Holder*, 556 U.S. 418, 433 (2009). As the party requesting a stay, Defendants "bear[] the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. In determining whether to issue a stay, a court should consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1989)).

For the reasons expressed above, Defendants have not made a strong showing that the *Montes* case is likely to result in a decision favorable to them on the question of Article III standing. Taken together, the remaining factors also weigh against issuing a stay in this instance. Defendants allege only that a remand may "impose unnecessary costs" on the parties and require

additional motions practice, Dkt. 16 at 8–9, neither of which rises to the standard of irreparable harm. To the extent that the public—a purported class of Washington consumers—is implicated in this case, it serves the public interest for this case to be litigated sooner rather than later. And although there is no evidence that Sheffield would be "substantially injure[d]" by a stay, Defendants do not proffer sufficient reason to postpone the resolution of her claims. While Defendants argue that the Court would benefit from the Ninth Circuit's guidance on this question, *id.* at 8, the same is true of the hundreds of other matters pending before the appeals court at any given time. To delay this case for an indeterminate amount of time while awaiting the outcome of an appeal in a separate matter would not be economical for the Court, for counsel, or for litigants.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. The above-captioned case is REMANDED to the Pierce County Superior Court.
2. The pending motion to dismiss (Dkt. 12) is DENIED as moot.
3. The Clerk shall mail a certified copy of this Order to the Clerk of Court for the Pierce County Superior Court.
4. The Clerk shall transmit the record herein to the Clerk of Court for the Pierce County Superior Court.
5. The Clerk shall close this case.

Dated this 9th day of October, 2026.

Tiffany M. Cartwright
United States District Judge